[Crim. No. 38073. Second Dist., Div. Five. June 22, 1981.]

In re JUAN G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JUAN G., Defendant and Appellant.

COUNSEL

Wilbur F. Littlefield, Public Defender, Kenneth I. Clayman and Henry J. Hall, Deputy Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, John R. Gorey and Elizabeth A. Baron, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STEPHENS, Acting P. J.**—On February 20, 1980, Los Angeles Police Officer Armenta observed Juan walking in a staggering manner. Juan was holding a sock to his nose. His eyes were bloodshot, there were silver particles around his lips and there was the odor of paint about his body. Juan was unable to converse coherently. Officer Armenta concluded that Juan was under the influence of paint and arrested appellant.[1]

A cursory search for weapons was made and a monocular spyglass was recovered. This spyglass turned out to have been stolen from a Mr. Simco in a burglary.

Juan was transported to a hospital where he was examined and declared fit for booking. He was then taken to the police station and booked. A decision was made to request that a juvenile petition be filed. Juan was asked about the paint sniffing and the monocular. He admitted the sniffing but stated he had acquired the monocular from a "Sleepy" who had informed Juan that it had been stolen. Juan was then released from the station after he was given what is referred to as a "cite-back," which instructed him to return to the police station for further discussion with another officer, Detective Rayaevski, who was involved with the investigation of robberies and burglaries. Before Juan returned for his discussion, Officer Armenta talked to Detective Rayaevski about him.

---

[1]One charge in the juvenile petition related to a use of toluene, a poison. The record shows that Officer Armenta testified that Juan was under the influence of paint, but never established that the paint contained toluene.

On Juan's return to the station on February 26th, in compliance with the "cite-back" notice,[2] Detective Rayaevski noticed Juan's apparent similarity to the robber description given in a "Grant/Stegall" robbery. Juan was photographed and released with a request that he call the detective at 1 p.m. that same day.

Juan proceeded to then involve himself in yet another robbery and was rearrested. This latter robbery is not involved in the present case. As to the "Grant/Stegall" robbery, Juan was identified as one of the persons who had accosted two persons, Grant and Stegall, with a knife and forced them to part with their funds. The picture taken of Juan on February 26th was used in the identification by the victim, Stegall.

The juvenile petition, which was found to be true in all respects, charged Juan with committing the "Grant/Stegall" robbery; use of a deadly weapon in the commission of the robbery; receiving stolen property, and inhalation of fumes of a poison, toluene, with intent to become intoxicated. Juan was declared a court ward and committed to the California Youth Authority.

The contentions on appeal are two: "(1) The 'cite-back' procedure employed by the police in this case was illegal and that illegality mandates reversal of the robbery charge. (2) The evidence was insufficient to sustain a charge of violation of Penal Code section 381, [the use of toluene]."

■ Was the "cite-back" procedure illegal? No.

The contention that the sole use of the "cite-back" procedure is to provide an interview with respect to other crimes is not borne out by the record.[3] We find that the "cite-back" procedure is not violative of Welfare and Institutions Code section 626, which reads in part as follows: "An officer who takes a minor into temporary custody under the provisions of Section 625 shall thereafter proceed as follows: '(a) He may release such minor; ...'"

---

[2] Juan's mother was invited to attend with Juan but for personal reasons chose not to accompany Juan.

[3] "Q: [Deputy Public Defender]: Do you recall whether the minor was cited to his mother? [¶] A: [Officer Armenta]: I filled out a notice to appear back to the station form for the juvenile, ordered him to appear back on a particular date. [¶] Q: What was the purpose of that? [¶] A: He is normally interviewed by investigators. The par-

The "release" of the minor does not necessarily absolve the minor of subsequently having a petition filed charging him with violations. The "release" does not prohibit the police from requesting, under the "cite-back" procedure, the minor to return with a parent so that the reason for the arrest may be discussed.

■ The argument that the minor was denied promptly being charged is untenable. There was no unreasonable delay here; the only delay was to provide the minor the opportunity to seek the assistance and counsel of his parent. He was not prejudiced in any conceivable manner. The cases cited as "analogous" are in construction of a different section and code and fail to support the contention.

■ The second contention likewise fails. While the petition specifically refers to "toluene" in its count III, it also refers to Penal Code section 381. The proof established a violation of subdivision (b) of that section, which at the relevant time provided: "Any person who willfully ingests, inhales, or breathes the fumes of any poison as defined in Schedule D of Section 4160 of the Business and Professions Code with intent to become intoxicated is guilty of a misdemeanor."

Effective January 1, 1980, section 4160 of the Business and Professions Code which contained schedule D was repealed and a new section 4160 was enacted. (Stats. 1979, ch. 437, §§ 13 and 14.) Subdivision (c) of new section 4160 states: "'Poison' as used elsewhere in this chapter shall reference a category of hazardous substances defined in section

---

ents are told what the charges are and that a petition will be filed against the juvenile. [¶] Q: Were you present when the minor was cited back to Foothill station? [¶] A: I filled out the form, sir, but I was not present when the juvenile was released to the mother. [¶] Q: Do you have a copy of that form today? [¶] A: I don't know whether it's attached—If there's a copy of it in the report for me. [¶] Q: "You don't have it, Counsel? [¶] THE WITNESS: The cite that he is talking about—[¶] Q: [Deputy Public Defender]: Do you recall whether the form indicated that failure to show up at Foothill station on whatever date it was would be a criminal offense? [¶] A: No, sir, it does not indicate that on the form. [¶] Q: Do you recall whether the form indicated that the minor was commanded to appear in Foothill station for investigation? [¶] A: No, sir. The form just—The information on the form is minor's name, address, and phone number; parent's name, investigator's name, arresting officer's name and the date and time that he should appear at the next hearing. [¶] Q: Have you arrested juveniles in the past, or is this your first juvenile— [¶] A: I have arrested numerous juveniles in the past. [¶] Q: Is this common practice of police officers after they have arrested a juvenile to cite them back? [¶] A: It's the procedure of the Los Angeles Police Department to do that when the juvenile is arrested and released to the parent. [¶] Q: To cite them back to the station— [¶] A: Yes. [¶] Q:—to recite the charges? [¶] A: Yes."

28743 of the Health and Safety Code which the board may by regulation make more specific."

A "hazardous substance" is defined under subdivision (a) of section 28743 of the Health and Safety Code as any substance or mixture of substances which is "toxic." Under section 28745 of the Health and Safety Code, a "toxic" substance is any substance "which has the capacity to produce personal injury or illness to man through ingestion, inhalation, or absorption through any body surface."

The variance of the charge and proof is immaterial here. ██ Additionally, Juan's appearance, actions, speech, possession of paint and the doctor's conclusions adequately substantiate that Juan had been sniffing a poison which had the capacity to produce personal injury.

The order of commitment is affirmed.

Ashby, J., and Hastings, J., concurred.